**FRYE et al. v. WAYLAND et al.  (No. 1756.)**

(Court of Civil Appeals of Texas.  Amarillo.
Feb. 16, 1921.  Rehearing Denied March
23, 1921.)

1. Appeal and error ⬾748(1)—Court might
refuse to consider assignments necessitating examination of record.

Where the statements of the proceedings
made in connection with the presentation of
assignments of error are insufficient to enable the Court of Civil Appeals to pass on the
assignments without an independent examination of the record and search for some of the
proceedings, the court might properly refuse
to consider such assignments, but the matter is
within its discretion.

2. Action ⬾50(1)—Petition against sellers of
stock who agreed to drill for oil held not bad
for misjoinder.

There was no misjoinder of causes of action and of parties in suit against defendants
who had sold stock in a corporation to be formed, agreeing to drill for oil on certain land
and to deliver the well as drilled to a specified
depth to the company; the claim of each separate purchaser having been assigned to plaintiffs, who owned jointly all the claims arising
out of the sales of stock to each of the purchasers named, including plaintiffs themselves.

3. Trial ⬾85—Overruling of general objection to testimony admissible in part not error.

Error cannot be assigned to the overruling of a general objection to testimony part of
which was admissible.

4. Mines and minerals ⬾101—Evidence held
admissible as tending to support claim well
not drilled to depth agreed by sellers of
stock in joint-stock association.

In suit by purchasers against sellers of
stock in a joint-stock association to be formed,
who agreed to drill for oil to the depth of
2,000 feet, and to turn the well over to association, defendants claiming that they drilled
the well to the depth agreed, testimony showing the well had been filled up soon after the
time when defendants claimed to have completed it to the depth of 2,000 feet, etc., held
admissible as a circumstance tending to support plaintiffs' contention that the well had
not been in fact drilled to any such depth.

5. Trial ⬾91—Motion to exclude testimony
after cross-examination addressed to discretion of court.

A motion to exclude testimony elicited on
examination in chief, made after cross-examination of the witness, is addressed largely to
the discretion of the trial court.

6. New trial ⬾99—Motion based on newly
discovered testimony apparently cumulative
and with no showing of diligence properly
overruled.

The trial court did not err in overruling
the motion for new trial on the ground of
newly discovered evidence, where the testimony relied on was cumulative, and there was
no showing as to when the testimony was discovered, nor why it was not produced on trial.

7. Mines and minerals ⬾101—Evidence held
to show as sole consideration for purchase
of stock in joint-stock association agreement
to drill oil well to certain depth, etc.

In suit against sellers of stock in a joint-stock association to be formed who agreed to
drill for oil to the depth of 2,000 feet and to
turn the well over to the association, defendants claiming that they drilled the well to the
depth agreed, evidence held to sustain case as
made by plaintiffs' pleading alleging that the
sole consideration for their purchase of the
stock was the agreement on the part of defendants to drill a well to a depth of 2,000 feet
unless oil or gas should be found in paying
quantities before.

Appeal from District Court, Hale County;
R. C. Joiner, Judge.

Suit by J. H. Wayland and others against
Roy J. Frye and others.  From judgment for
plaintiffs, defendants appeal.  Affirmed.

H. C. Randolph, P. B. Randolph, Kinder,
Russell & Griffin, and W. W. Kirk, all of
Plainview, and Heyser, Hicks, Wilson & Williams, of Wichita Falls, for appellants.

Williams & Martin and L. D. Griffin, all
of Plainview, for appellees.

BOYCE, J.  J. H. Wayland and others
brought this suit against R. J. Frye and others, and alleged: That the defendants owned
an oil lease on 2½ acres of land in Wichita
county, Tex., and entered into an agreement
among themselves for the formation of an
unincorporated joint-stock association, known
as the O'Keefe-May Oil Company, under the
terms of which agreement the said defendants proposed to sell stock in said company
and use a portion of the proceeds of the sale
of such stock in the drilling of a well on said
tract of land, appropriating to their own use
any excess of funds derived from the sale
of said stock and deliver the completed well
to the company, composed of the persons
buying such stock.  That in pursuance to
such agreement they sold all of the stock
of said proposed company, agreeing with each
purchaser of such stock that they would,
as soon as possible after such sale, begin
the drilling of a well on said premises and
drill the same to a depth of 2,000 feet,
unless oil or gas in paying quantities should
be found at a lesser depth, "said well to be
drilled, equipped, and delivered to the company."  This agreement was evidenced by
a written receipt, delivered to each purchaser of stock, such receipt being on a form
used by the said defendants and delivered to each of such purchasers.  That the
defendants sold certain shares of said stock
under said agreement as to the drilling of the
well to numerous persons, including some
66 parties, whose names and the number of
shares purchased by each are set out in the
fourth subdivision of the petition.  This
statement includes the names of the plain-

tiffs. That the defendants made certain false representations to each of such purchasers (but, as the recovery was not on this phase of the case, it is not necessary to set them out). That by reason of the agreements with the said purchasers, as above set out, the defendants became bound to the purchasers of said stock, jointly and severally, to begin such well on said land and drill it to said depth within a reasonable time and to deliver such well, fully equipped, to the said stockholders. That the defendants have failed and refused to drill said well as they were bound to do, but have abandoned same. That the drilling and completion of said well and delivery of same to the stockholders was the real and whole consideration for the moneys received by the defendants for the shares of stock sold, to the persons named in said paragraph 4 of the petition; that each of the persons named in said paragraph as having purchased shares of said stock, and paid therefor as stated, have transferred and assigned to the plaintiffs all their rights and cause of action against the defendants, and that the plaintiffs are the joint owners of all such rights and causes of action. Wherefore plaintiffs pray that they have judgment against the defendants for the sum of $10,475, the total amount paid by the said purchasers of said stock mentioned in paragraph 4 to the defendants in payment therefor. The petition contains a second count, but, as the recovery was had on the first count, we need not state the allegations of such second count.

The answer of the defendants alleged the agreement under which the stock was sold to be substantially as alleged by plaintiffs, but specially answered that the said well had been drilled to said depth of 2,000 feet, as agreed. It was undisputed that a well to some considerable depth had been drilled by the defendants; that no oil or gas was discovered, and the well was abandoned and filled up and the lease forfeited. The depth of the well so drilled was the controverted issue of fact. The jury found that the defendants had not drilled the well to the depth provided by their contract, and this finding is supported by the evidence. On such finding the court rendered judgment for the plaintiffs for the recovery of the amounts paid the defendants for said stock.

[1] The appellees object to the consideration of appellants' assignments on the ground that the statements made thereunder are not sufficient. The statements of the proceedings made in connection with the presentation of the assignments are not sufficient to enable us to pass on the assignments without an independent examination of the record and search for some of the proceedings, and we might properly refuse to consider these assignments. However, this is a matter within our discretion, and, as the examination of the record necessary to enable us to pass on the assignments has not entailed any undue amount of work, and there is not any real controversy as to such matters, we have considered the assignments on their merits.

[2] The first two assignments complain of the overruling of appellants' exceptions to the plaintiffs' petition, on the ground of misjoinder of causes of action and of parties. We overrule these assignments. If it be true that the sale of stock to each purchaser was evidenced by a separate and independent contract between the defendants and such purchaser, and that each purchaser might have maintained a suit against the defendants for the breach of such contract, still each of these claims were assignable, and it was alleged that all claims sued on had been assigned to the plaintiffs. Under the allegations of the petition there were no several interests in any of the plaintiffs, but they owned jointly all the claims arising out of the sales to each of the purchasers named, including the plaintiffs themselves. It is well settled that a plaintiff may, subject to some limitations which we need not state, include in one suit separate and distinct demands held by the plaintiff against the same defendant. There seems to us to be no good reason why, under our liberal practice in regard to joinder of parties and causes of action, the plaintiffs might not litigate all the claims set out in the petition in this one suit. In fact, there is every reason to favor such course. All of the claims were based on a contract identical in terms, and the same state of facts is alleged as constituting a breach of each contract. See the following authorities for discussion of the practice of our courts in such matters. Clegg v. Varnell, 18 Tex. 294, 302, 305; Love v. Keowne, 58 Tex. 191, 198; Townes on Pleading (2d Ed.) pp. 212–224.

[3] The third assignment complains of the admission of some testimony of the witness Kimmelman. The assignment and bill of exception on which it is based embrace a number of questions propounded to the witness and their answers. The questions and answers are in reference to different matters. To some of them no objection was urged, and different objections were urged as to different answers. These circumstances alone would require that we overrule the assignment. The proposition under the assignment complains of the admission of a portion of the answer to only one of the questions. A part of this answer is objectionable as being hearsay, but the objection was made to the whole of the answer, and was that the evidence was "incompetent, irrelevant, and prejudicial." A part of this answer itself was admissible; the inadmissible part being only a voluntary interjection by the witness. So that, if the assignment should be considered as properly presenting an objection to this particular part of the evidence embraced in the assignment, and if

the objection is sufficient to warrant the appellant in now complaining of a portion of the answer as being hearsay, still the assignment should be overruled because error cannot be assigned in the overruling of a general objection to testimony, a part of which was admissible.

[4, 5] The fourth assignment should be overruled for two reasons: In the first place, we think the conversation referred to in the assignment was admissible as tending to support plaintiffs' contention that the well was not drilled down to a depth of 2,000 feet. The evidence on the issue was sharply contradictory. There was evidence which tended to prove that the testimony of the drillers who swore that they drilled the well down from 1,200 to 2,000 feet was positively false, and that the driller and one of the defendants had attempted to fabricate testimony in support of the contention that the well had been drilled 2,000 feet. The conversation referred to was between the witness and another one of the defendants and occurred at a time when the well had been drilled to a depth of about 1,200 feet. In this conversation reference was made to the dissatisfaction of the purchasers of the stock with the conduct of the defendants, and the said defendant engaged in the conversation admitted that the well at that time had not been drilled 2,000 feet, but stated that the defendants were going to drill to such depth. The witness then suggested that, if they should drill on down, they should let somebody be there to measure the well so that there would be no dissatisfaction, and the said defendant replied that, if he had anything to do with it, he intended to see that it was measured. Other testimony showed that the well had been filled up soon after the time when the defendants claimed to have completed it to the depth of 2,000 feet, and there was no evidence of its being measured except by the employees of the defendants doing the drilling. As stated, we think this testimony was admissible as a circumstance tending to support the plaintiffs' contention that the well had not as a matter of fact been drilled from 1,200 feet to 2,000 feet. In the second place, no exception was taken to the admission of the testimony, but the defendants cross-examined the witness and moved to exclude the evidence thereafter. Such a motion is addressed largely to the discretion of the trial court, and no facts appear which would warrant us in holding that this discretion was abused. Knights of Maccabees v. Johnson, 143 S. W. 720, and authorities.

The fifth assignment complains of no ruling of the court. It consists of a recital of numerous facts and proceedings, but makes no specific complaint of an error in reference to any of them.

[6] It seems to be the purpose of the sixth assignment to complain of the action of the court in refusing to grant a new trial on account of newly discovered evidence. The testimony referred to seems to be cumulative; it is not shown when it was discovered nor why it was not produced on the trial, so that no error is shown in the action of the court in overruling the motion on this account.

[7] The seventh assignment complains that the judgment is unsupported by the evidence in that it was pleaded that the sole consideration for the plaintiffs' purchase of the stock was the agreement on the part of the defendants to dig a well to a depth of 2,000 feet, unless oil or gas should be found in paying quantities before such depth should be reached, and the evidence fails to establish such fact. The whole undertaking on the part of the defendant was, according to the evidence and their own pleading, to drill the well as stated. So we think the evidence fully sustains the case as made by the pleading.

We find no reversible error assigned, and the judgment will be affirmed.

